**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MADISON McGRATH,** | ) | |
| | ) | Civil Action No. ________ |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **JURY TRIAL DEMAND** |
| **MANHEIM TOWNSHIP** | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Madison McGrath ("Plaintiff" or "McGrath"), by and through her undersigned counsel, brings this action against Defendant Manheim Township ("Defendant" or the "Township"), and alleges as follows:

## I. INTRODUCTION

1. This action arises from the Township's treatment of McGrath during her pregnancy, pregnancy-related limitations, approved FMLA leave, and brief medically supported postpartum leave.

2. McGrath was promoted to Director of Food Service, earned positive evaluations, and had no disciplinary history.

3. After McGrath disclosed pregnancy-related physical limitations, Human Resources promised assistance but did not implement an effective accommodation.

4. Before McGrath began leave, the Township represented that Spirit Golf Management, LLC ("Spirit Golf") would assist during her temporary absence and work with her upon her return.

5. On March 30, 2026, while McGrath remained on FMLA leave, Human Resources confirmed that she would return to her Director position with the same pay and benefits.

6. On April 29, 2026, McGrath requested a finite period of medically necessary leave through June 3, 2026. That same day, the Township informed her that her Director position had been eliminated.

7. The Township thereafter offered McGrath a lower-paid, non-exempt position with narrower authority, mandatory bar and counter shifts, and loss of tenure, and ended her employment on the date she was scheduled to return.

## II. PARTIES

8. Plaintiff Madison McGrath is an adult individual residing in Lancaster County, Pennsylvania.

9. The Township employed McGrath from March 11, 2024, through June 4, 2026.

10. Defendant Manheim Township is a political subdivision located in Lancaster County, Pennsylvania, with its principal offices at 1840 Municipal Drive, Lancaster, Pennsylvania 17601.

11. At all relevant times, the Township employed the number of employees required to constitute an employer under Title VII of the Civil Rights Act of 1964, the Pregnant Workers Fairness Act, and the Family and Medical Leave Act.

12. The individuals who participated in the challenged employment actions acted as the Township's agents and within the scope of their authority.

## III. JURISDICTION AND VENUE

13. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343.

14. McGrath's claims arise under Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. §§ 2000e et seq.; the Pregnant Workers Fairness Act ("PWFA"), 42 U.S.C. §§ 2000gg et seq.; and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 et seq.

15. Venue is proper in this District under 28 U.S.C. § 1391 because the Township resides in this District and the events giving rise to these claims occurred in Lancaster County, Pennsylvania.

## IV. ADMINISTRATIVE EXHAUSTION

16. On June 1, 2026, McGrath timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was dual-filed with the Pennsylvania Human Relations Commission.

17. The Charge alleged discrimination and retaliation based on sex, pregnancy, pregnancy-related medical conditions, requests for accommodation, and protected leave, including violations of the PDA and PWFA.

18. On July 24, 2026, the EEOC issued McGrath a Notice of Right to Sue, see attached as Plaintiff's **Exhibit A**.

19. McGrath commenced this action within ninety days after receiving the Notice and has satisfied all conditions precedent applicable to her federal discrimination claims. She reserves the right to amend to include her PHRA claims once they have been fully exhausted.

## V. FACTUAL ALLEGATIONS

### A. McGrath's Successful Employment

20. The Township hired McGrath as Assistant Director of Food Service on March 11, 2024.

21. In approximately October 2024, the Township promoted McGrath to Director of Food Service.

22. As Director, McGrath led the Township's food-service program across multiple locations and operations, including the Sand Trap Restaurant, food carts, municipal-pool and activity-center concessions, satellite concessions, vending, and special events and catering.

23. McGrath was responsible for staffing, employee supervision and discipline, regulatory compliance, budgeting, inventory, purchasing, events, and vendor relationships.

24. The position also involved physical work, including receiving and storing deliveries, moving food and beverage supplies, prolonged standing, and event setup and breakdown.

25. McGrath performed her position successfully, received positive evaluations, and was not disciplined or advised that her position was in jeopardy.

**B. Pregnancy and Requests for Accommodation**

26. On or about October 15, 2025, McGrath informed Assistant Township Manager Andy Bowman, her direct supervisor, and Interim Human Resources Director Ryan Hoffmann that she was pregnant.

27. As her pregnancy progressed, McGrath experienced increasing difficulty with heavy lifting, prolonged standing, bending, twisting, receiving and storing deliveries, event setup and breakdown, and using caustic kitchen-cleaning chemicals.

28. In December 2025, Hoffmann and Human Resources Generalist Haley McDonald told McGrath to advise Human Resources if she needed accommodation.

29. McGrath thereafter requested and attended a meeting with Hoffmann and McDonald to discuss her pregnancy-related limitations, possible accommodations, and any required medical documentation.

30. McGrath explained that deliveries could include bulk frozen food, condiment jugs, kegs, cases of beverages, and soda-syrup containers weighing up to approximately fifty pounds.

31. McGrath requested a reliable plan for obtaining assistance when receiving and storing deliveries and when performing physically demanding event setup and breakdown.

32. McGrath also requested assistance using corrosive chemicals to clean kitchen equipment.

33. Hoffmann and McDonald told McGrath that she could call Human Resources and that they would arrange help. They also stated that they would develop a system for event assistance.

34. The Township did not implement the promised system or otherwise provide McGrath with reliable assistance.

35. McGrath called Human Resources for assistance on approximately three occasions from her Township-issued telephone, but the promised help did not materialize.

36. McGrath could perform the essential functions of her position with temporary assistance or modification of the physically strenuous duties.

37. Reasonable measures available to the Township included assistance with heavy lifting and hazardous cleaning, temporary redistribution of limited physical tasks, modified duty, and other short-term workplace adjustments.

**C. Spirit Golf Is Presented as Temporary Support**

38. In late October 2025, Bowman introduced Spirit Golf as a consultant that would work alongside the Township's food-service and golf departments, assist operations, and offer ideas for revenue and community engagement.

39. Bowman served as the principal intermediary between McGrath and Spirit Golf and relayed Spirit Golf's questions to McGrath for response.

40. In December 2025, Bowman told McGrath that Spirit Golf would assist Food Service during her maternity leave and would work with her when she returned.

41. No one told McGrath before she began leave that Spirit Golf's involvement might eliminate or replace her Director position.

42. From approximately October 2025 until she began leave, McGrath repeatedly asked Bowman, verbally and through Township email, what she should prepare so that operations would be covered during her temporary maternity leave.

43. Bowman repeatedly instructed McGrath to hold off on coverage planning because he was working through matters with Spirit Golf.

44. In one meeting, McGrath had begun preparing coverage herself, but Bowman directed her to stop or hold off. Assistant Director of Food Service Maria Flores witnessed that instruction.

45. McGrath therefore understood that her leave was temporary, Spirit Golf would provide support during it, and she would resume directing the operation upon her return.

**D. Protected Leave and Assurance of Restoration**

46. On February 10, 2026, McGrath began continuous FMLA leave because of pregnancy, childbirth, and related medical needs.

47. The Township approved and treated the leave as FMLA-protected.

48. During leave, McGrath remained in regular contact with Human Resources about FMLA leave, short-term disability benefits, maternity benefits, and her anticipated return.

49. On February 12, 2026, Hoffmann advised McGrath that the parties should discuss her return in mid-April and whether she might need to extend her leave beyond twelve weeks through the Township's personal-medical-leave process.

50. On March 23, 2026, McGrath emailed Hoffmann with questions about benefits, leave, return-to-work procedures.

51. After McGrath followed up on March 30, Hoffmann telephoned her and confirmed that she would return to her Director position with the same pay and benefits.

52. During the same call, Hoffmann updated McGrath concerning seasonal summer hiring for the operation she was expected to resume managing.

53. These communications conveyed that McGrath remained employed and would return to her Director position after leave.

### E. Brief Postpartum Leave Request and Elimination of Position

54. On April 13, 2026, McGrath informed Human Resources that she did not expect to be medically cleared when her FMLA leave expired on May 5 and requested the procedure for extending her leave.

55. Hoffmann provided the procedure for requesting an unpaid personal leave of absence and requested a written request and medical certification identifying the reason, duration, and expected return date.

56. McGrath delivered her child on April 22, 2026.

57. On April 29, 2026, McGrath's medical provider certified that she could return to work on June 3, 2026, absent complications.

58. That same day, McGrath formally requested unpaid personal medical leave through June 3, with an anticipated return on June 4, 2026.

59. The additional leave was finite, medically supported, and lasted less than one month beyond the expiration of McGrath's FMLA leave.

60. Also on April 29, while McGrath remained on pregnancy and medical leave, Hoffmann telephoned and informed her that the Director of Food Service position had been eliminated.

61. This announcement came less than one month after Hoffmann had confirmed that McGrath would return to that position and on the same day she followed the Township's process to request brief postpartum leave.

62. Hoffmann stated that McGrath could apply for a newly created position with no guarantee of selection and that, if selected, the Township would consider her a new employee and she would lose her tenure.

63. McGrath asked whether she would lose tenure despite having worked for the Township for approximately two years, and Hoffmann answered yes.

64. McGrath memorialized this conversation in an email sent that day after Hoffmann did not provide the written follow-up she had requested.

65. The Township subsequently acknowledged that it had approved McGrath's unpaid medical leave through June 3, 2026.

**F. The Proposed Position Was Not Equivalent**

66. On or about May 4, 2026, the Township offered McGrath the newly created Sand Trap Bar and Grill Manager position.

67. The offered position paid $27.00 per hour and was classified as non-exempt, whereas McGrath's Director position paid an annual salary of $65,000 and was exempt.

68. At forty hours per week, the offered position's base compensation was approximately $8,840 less annually than McGrath's Director salary.

69. The Director position had Township-wide responsibility for multiple food-service locations and operations, while the proposed position primarily concerned the Sand Trap, golf outings and events, and the food-and-beverage cart at Overlook Golf Course.

70. The Director position included broader policy, budget, financial, supervisory, evaluation, leave-approval, discipline, and discharge authority.

71. The proposed position required McGrath to coordinate with Spirit Golf's manager and work in tandem with Spirit Golf leadership, a management structure that did not govern her Director position.

72. The proposed position required McGrath personally to work at least three to four bar or counter shifts each week, which had not been a regular requirement of her Director position.

73. The position thus reduced McGrath's compensation, exempt status, tenure, scope of responsibility, authority, and professional status and imposed materially different duties.

74. The proposed position was not the same as or equivalent to the Director position.

**G. Termination on the Scheduled Return Date**

75. On May 12, 2026, Human Resources confirmed in writing that the Township had eliminated McGrath's Director position and would end her employment effective June 4, 2026.

76. The May 12 communication simultaneously acknowledged that the Township had approved McGrath's medical leave through June 3 and that she was scheduled to return on June 4.

77. Thus, the Township selected McGrath's scheduled return date as the effective date of termination.

78. Food-service operations did not cease. The Township continued the operation and created a management position incorporating work associated with the operation McGrath had directed.

79. Before leave, Spirit Golf had been described as temporary support that would work with McGrath upon her return; on March 30, the Township assured her that she would return as Director; on April 29, she requested a finite extension and was told that same day her job was gone; and she was then offered a materially inferior position and terminated on her scheduled return date.

80. These facts permit a reasonable inference that the Township's asserted restructuring rationale does not fully explain the timing and manner in which McGrath lost her position and employment.

81. As a result of the Township's conduct, McGrath suffered lost wages and benefits, loss of employment opportunities, emotional distress, inconvenience, and other damages.

**COUNT I – TITLE VII/PREGNANCY DISCRIMINATION**
**42 U.S.C. §§ 2000e et seq.**

82. McGrath incorporates Paragraphs 1 through 81 as if fully set forth herein.

83. Title VII, as amended by the PDA, prohibits discrimination because of sex, including pregnancy, childbirth, and related medical conditions.

84. McGrath was pregnant and later recovering from childbirth during the events at issue, and the Township knew of her pregnancy.

85. McGrath was qualified for and successfully performed the Director position.

86. While McGrath was absent because of pregnancy and childbirth, the Township eliminated her position, offered her a materially inferior position, and ended her employment on her scheduled return date.

87. Food-service operations continued, despite elimination of McGrath's title and employment.

88. The timing of these actions, the March 30 assurance of restoration, the Township's prior description of Spirit Golf, the same-day leave request and elimination announcement, and the inferior replacement position permit a reasonable inference that pregnancy, childbirth, and related medical conditions were motivating factors in the Township's decisions.

89. The Township discriminated against McGrath because of pregnancy, childbirth, and related medical conditions in violation of Title VII and the PDA.

90. As a direct and proximate result, McGrath suffered the damages alleged above.

**COUNT II – PREGNANT WORKERS FAIRNESS ACT**
**42 U.S.C. §§ 2000gg et seq.**

91. McGrath incorporates Paragraphs 1 through 90 as if fully set forth herein.

92. McGrath was an employee protected by the PWFA.

93. McGrath communicated known limitations related to pregnancy, including limitations involving lifting, prolonged standing, bending, twisting, event work, and hazardous cleaning.

94. The Township knew McGrath required temporary assistance or modification of physically strenuous duties.

95. McGrath was qualified because she could perform the essential functions with reasonable accommodation and, alternatively, any temporary inability to perform particular physical functions could reasonably have been accommodated.

96. Reasonable accommodations included temporary lifting and event assistance, redistribution or modification of limited physical duties, and assistance with hazardous cleaning.

97. Although Human Resources promised assistance and a system for obtaining it, the Township failed to provide an effective accommodation or meaningful interactive process.

98. Following childbirth, McGrath required a finite, medically supported period of leave through June 3, 2026, and the Township knew her anticipated return date.

99. The Township eliminated McGrath's position while she was exercising pregnancy-related accommodation rights and ended her employment effective the date she was scheduled to return.

100. The Township thereby denied reasonable accommodation and subjected McGrath to adverse action because she requested and used accommodations related to pregnancy, childbirth, and related medical conditions, in violation of the PWFA.

101. As a direct and proximate result, McGrath suffered the damages alleged above.

**COUNT III – FMLA INTERFERENCE**
**29 U.S.C. §§ 2614 and 2615**

102. McGrath incorporates Paragraphs 1 through 101 as if fully set forth herein.

103. The Township was an employer subject to the FMLA, and McGrath was an eligible employee entitled to its protections.

104. McGrath exercised FMLA rights beginning February 10, 2026, for pregnancy, childbirth, and related medical reasons.

105. An employee returning from FMLA leave is entitled to restoration to the position held before leave or an equivalent position with equivalent pay, benefits, and other terms and conditions of employment.

106. While McGrath exercised FMLA rights, the Township determined that she would not return to the Director position it had assured her she would resume.

107. The Township did not restore McGrath to her Director position or provide an equivalent position.

108. Instead, it offered a lower-paid, non-exempt position with loss of tenure, narrower authority, and materially different duties.

109. The Township then ended McGrath's employment effective June 4, 2026.

110. The Township thereby interfered with, restrained, or denied McGrath's exercise of and entitlement to rights protected by the FMLA.

111. As a direct and proximate result, McGrath suffered damages recoverable under the FMLA.

**COUNT IV – FMLA RETALIATION**
**29 U.S.C. § 2615**

112. McGrath incorporates Paragraphs 1 through 111 as if fully set forth herein.

113. McGrath invoked and exercised rights protected by the FMLA, and the Township knew that she had done so.

114. While McGrath remained on FMLA leave, the Township eliminated the position to which it had recently assured her she would return.

115. The Township then offered McGrath a materially inferior position and ended her employment on her scheduled return date.

116. The adverse actions were causally connected to McGrath's exercise of FMLA rights.

117. The actions occurred during leave, after repeated discussions about restoration, and in close temporal proximity to McGrath's communications regarding return and medically necessary leave.

118. The Township's prior assurances, the timing and circumstances of the restructuring, the continuing food-service operation, and the inferior position permit

a reasonable inference that McGrath's FMLA leave was a negative factor in the Township's employment decisions.

119. The Township retaliated against McGrath for exercising rights protected by the FMLA.

120. As a direct and proximate result, McGrath suffered damages recoverable under the FMLA.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Madison McGrath respectfully requests judgment in her favor and against Defendant Manheim Township and requests that the Court:

**A.** Declare that the Township violated McGrath's rights under applicable federal law;

**B.** Award back pay, lost wages, lost benefits, and other economic losses;

**C.** Award front pay in lieu of reinstatement or, if appropriate, order reinstatement to a comparable position;

**D.** Award compensatory damages for emotional distress, inconvenience, humiliation, and other non-economic injuries to the extent permitted by law;

**E.** Award liquidated damages under the FMLA;

**F.** Award prejudgment and post-judgment interest;

**G.** Award reasonable attorneys' fees, litigation expenses, and costs;

**H.** Award appropriate equitable and injunctive relief; and

**I.** Grant such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all claims and issues so triable.

DATED: September 24, 2026

Respectfully submitted,

**DONHAM LAW**

By: */s/ Jeremy A. Donham*
Jeremy A. Donham (PA 206980)
714 Venture Drive, Suite 144
Morgantown, West Virginia 26508
Phone: 717.881.7855
J.Donham@Donhamlaw.com

*Counsel for Plaintiff Madison McGrath*